313 F.2d 449
 63-1 USTC P 9283
 OYSTER SHELL PRODUCTS CORPORATION, Inc., Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Arthur ACKERMAN and Evelyn Ackerman, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Gustaf A. E. ACKERMAN and Grace L. Ackerman, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 197-199, Dockets 27508-27510.
 United States Court of Appeals Second Circuit.
 Argued Dec. 13, 1962.
Decided Feb. 13, 1963.
 
 McKercher & Link, New York City (George Link, Jr., Charles H. Buckley, New York City, of counsel), for petitioners.
 Louis f. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson, David O. Walter, Earl J. Silbert, on brief, Attorneys, Dept. of Justice, Washington, D.C., for respondent.
 Before WATERMAN, MOORE and SMITH, Circuit Judges.
 LEONARD P. MOORE, Circuit Judge.
 
 
 1
 These are petitions for review of three decisions of the Tax Court of the United States, finding deficiencies in income tax due from the petitioners for the calendar year 1950. The three cases were tried together before the Tax Court and are so treated here. Oyster Shell Products Corporation, Inc. (Oyster Shell) petitions for review of the decision sustaining a deficiency assessment of $48,607.30 which was based on the imposition of a surtax under Section 102 of the Internal Revenue Code of 1939[1] on the finding that Oyster Shell was availed of during the calendar year 1950 for the purpose of preventing the imposition of a surtax upon its shareholders by permitting its earnings to accumulate beyond the reasonable needs of its business. The sole stockholders of Oyster Shell, Arthur Ackerman (Arthur) and Gustaf A. E. Ackerman (Gustaf) and their wives, also petition for review of the decisions sustaining deficiency assessments of $28,154.24 and $20,985.10, respectively, which were based on the findings that withdrawals made in 1950 from Oyster Shell by the stockholders, purportedly as loans, were in reality disguised distributions of earnings and, therefore, includible in their gross income as dividends under Section 115(a) of the Internal Revenue Code of 1939.[2] The petitions of the Ackerman involve factors cumulative to the petition of Oyster Shell and will be considered first.
 
 The Ackermans
 
 2
 Oyster Shell was[3] a Louisiana Corporation organized on July 12, 1920, with its home office at New Rochelle, New York. At all times since the organization of Oyster Shell, Arthur has held the offices of president and treasurer and Gustaf the offices of vice-president and secretary. Together they constituted the only stockholders, Arthur owning 3,995 shares and Gustaf owning one share.
 
 
 3
 Oyster Shell has never paid a dividend since its formation. Throughout the existence of the corporation, running accounts in favor of Arthur and Gustaf were maintained, allowing them to make substantial withdrawals from the corporation. A similar account was maintained in the name of Argus Co., a partnership composed of Arthur and Gustaf. In 1950, the year in question, Arthur withdrew $30,047.69 through his account and $18,599.36 through the Argus Co. account; Gustaf withdrew $24,178.40 through his account and $14,216.73 through the Argus Co. account. The balance of the withdrawals made over the years including 1950 came to some $472,000. No interest was charged to Arthur or Gustaf by Oyster Shell, no notes were executed with respect to these withdrawals, and no date or other provisions were made with respect to repayment. Part of the proceeds was used by them to purchase stocks, bonds, and futures in their individual names. All gains, losses, dividends and interest resulting from these transactions were reflected on their personal income tax returns. The Commissioner asserted deficiencies claiming that the 1950 withdrawals were actually dividends. The Ackermans contend that the withdrawals were used to purchase securities to be held by them as nominees for the corporation for the sake of more convenient trading or, somewhat inconsistently, that the amounts were actually loans. The Tax Court agreed with the Commissioner and sustained the deficiencies assessed. We affirm.
 
 
 4
 To state the facts is to decide the case here. It would be difficult to find a better example of the classic situation of siphoning off the income of a closely held corporation, claiming the payments to be loans but never making repayment or paying interest. See Spheeris v. Commissioner, 284 F.2d 928 (7th Cir., 1960); Regensburg v. Commissioner, 144 F.2d 41 (2d Cir., 1944), cert. denied, 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625; Lengsfield v. Commissioner, 241 F.2d 508 (5th Cir., 1947). The stock purchase explanation, apart from its inherent implausibility, does not account for all of the withdrawals and does not comport with the Ackermans' treatment of the gains and losses from the transactions as theirs on their personal income tax returns.[4] Further, the past history of these accounts indicates quite forcefully that petitioners had no intention of making repayment at the time of the transaction. See Ben R. Meyer, 45 B.T.A. 228 (1941).
 
 Oyster Shell
 
 5
 Oyster Shell was engaged in the business of converting reef oyster shell into various finished products at two plants located on opposite banks of the Atchafalaya River at Berwick and Morgan City, Louisiana. In this general vicinity, the United States Army Corps of Engineers were constructing a flood control project as an integral part of the control system for managing floods on the Mississippi River.[5] The planning of this project was in process in 1920 and continued until by August 1950 Oyster Shell knew that floodwalls would be constructed behind (landward) both Oyster Shell plants and that the United States would pay it only for flowage easements resulting from the landward placement of the levees. Oyster Shell refused to settle on these terms and the Government instituted condemnation proceedings. The corporation counter-claimed, seeking the full value of the enterprise as compensation on the ground that building the levees landward of the plants, and thus abandoning them to the flood waters whenever diversion from the Mississippi was necessary, constituted a complete taking. After termination of the action in the Government's favor, Arthur renewed negotiations with the Army Engineers and a settlement for flowage easements over the Oyster Shell properties was effected.
 
 
 6
 At the end of 1950, the current assets of Oyster Shell included cash of $332,793.38, receivables of $121,094.02, and marketable securities of $60,657; total liabilities were $246,251.18. Earned surplus increased in 1950 by over $300,000 bringing total earned surplus to over $1,000,000.
 
 
 7
 On March 5, 1956, the Commissioner notified Oyster Shell that he proposed to issue a notice of dificiency relating to a surtax based on its undistributed earnings for the year 1950. Oyster Shell submitted to the Commissioner a statement setting forth the facts upon which it relied to establish that none of its earnings had been permitted to accumulate beyond the reasonable needs of the business. The Commissioner, on September 25, 1956, issued a notice of deficiency which the Tax Court sustained. We affirm.
 
 
 8
 The ultimate issue in any proceeding under Section 102 of the Internal Revenue Code of 1939 is whether the corporation has been formed or availed of for the proscribed purpose, that is, for 'the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed.' Resolution of this basically subjective inquiry is aided by the evidentiary corollary of Section 102(c)[6] which provides that when the earnings are found to have been accumulated beyond the reasonable needs of the business a rebuttable presumption arises that the corporation was availed of for the proscribed purpose. If a taxpayer loses on the 'reasonable needs' issue, he is not foreclosed from contesting the ultimate issue of 'proscribed purpose' but here he needs a preponderance of the evidence to prevail. See R. Gsell & Co., Inc. v. Commissioner, 294 F.2d 321 (2d Cir., 1961). Thus, in most cases, 'the real controversy * * * concerns the presence or absence of a valid business reason for accumulating earnings.' American Metal Prods. Corp. v. Commissioner, 287 F.2d 860, 863 (8th Cir., 1961).
 
 
 9
 The Tax Court assumed, as do we, that the statement submitted to the Commissioner by Oyster Shell was adequate to invoke the operation of Section 534(c) of the Internal Revenue Code of 1954 and to switch the burden of proof to the Commissioner, 'with respect to the grounds set forth in such statement,' on the issue of the reasonableness of the challenged accumulations in the light of taxpayer's business needs. R. Gsell & Co., Inc. v. Commissioner, supra. The Tax Court, nonetheless, found that the Commissioner met his burden of persuasion and that taxpayer had accumulated earnings beyound the reasonable needs of the business.
 
 
 10
 The statement submitted by Oyster Shall claimed, in substance, that its plaints were 'in constant danger of being completely or partially washed away' as a result of conditions that prevail along the Missippi River and that earnings were accumulated to build a plant on land removed from the flood danger. It claimed also that the expansion of the business and replacement of equipment required the accumulation in issue. In seeming accord with the first contention is the fact that the corporation had purchased some land at another location in 1947 and had made minor improvements thereon. The professed intention to appropriate the accumulated funds to the building of a new plant was belied, however, by Arthur's testimony at the trial that any such plans were contingent upon a substantial recovery from the Government. The new plant was to be financed by the Government, not by the accumulated earnings of Oyster Shell. This conclusion is buttressed by the fact that the property which was to be the site of the new plant was sold when it became apparent that a substantial recovery would not be forthcoming. The possibility of sever flooding was also made somewhat dubious by tables introduced by expert government witnesses indicating that expected flooding would not produce more than minor damages, and that severe flooding was so remote as to be a negligible risk. The location of the levees landward of the plant might have been disquieting to Oyster Shell but these same government witnesses indicated that the danger of flooding was not noticeably increased thereby. The Tax Court's conclusion that this alleged fear or flooding was conjured up when it learned of the Commissioner's intention to impose the surtax is well supported by the record.
 
 
 11
 As to the plant expansion and equipment replacement contentions, no facts evidencing a major expansion were presented. Oyster Shell contended that normal replacement and expansion needs dictated accumulation of these earnings but plant expansion for the prior ten years had, however, been financed out of current earnings and many times substantial additions had been made to earned surplus. This ability to finance expansion from current earnings in damonstrated clearly by the fact that capital expenditures for the years 1950-54 were less than the increase in earned surplus for those years.
 
 
 12
 In addition the Tax Court had before it a number of other factors negating any reasonable need for the accumulation and strongly indicating a purpose to prevent imposition of a surtax on Oyster Shell's stockholders. The fact that the two shareholders made the substantial withdrawals discussed above-- nearly $90,000 in 1950-- was a tacit recognition that the accumulation was not necessary for the corporation's business needs. Their claim that this money was always available to the corporation and that they used it to buy stock for the corporation is of no comfort to them on this aspect of the case. Investing in the stock of unrelated corporations does not of itself make the accumulation reasonable; a taxpayer must first show that the accumulation for this purpose was dictated by a business need requiring the maintenance of a liquid position. Helvering v. Chicago Stock Yards Co., 318 U.S. 693, 63 S.Ct. 843, 87 L.Ed. 1086 (1943); Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346 (1938); Kerr-Cochran, Inc. v. Commissioner, 253 F.2d 121 (8th Cir., 1958); Treas.Regs. 29, 102-2, 103-3; cf. R. Gsell & Co., Inc. v. Commissioner, supra. This Oyster Shell has failed to do.
 
 
 13
 Closely related to this factor of shareholder withdrawals is the significant one of corporate liquidity. At the close of 1950, Oyster Shell's liquid assets exceeded total liabilities by a ratio of 2 to 1. For most of the years prior to 1950, the corporation had substantial liquid assets. While we are aware that a closely held corporation may, and many times must, rely on its own earnings to continue and expand operations, R. Gsell & Co., Inc. v. Commissioner, supra, when retained earnings are idle or are invested for purposes unrelated to the business, the accumulation becomes suspect. Inactive employment of the corporation's earnings usually indicates an intent to permit the stockholders to avoid the income tax they would ordinarily pay on the distribution of dividends. Smoot Sand & Gravel Corp. v. Commissioner, 274 F.2d 495 (4th Cir., 1960). Finally, Oyster Shell had not declared a dividend in its thirty years of corporate existence, thus effecting large tax savings to its two shareholders. Coupled with this nodividend policy was the so-called loan arrangement whereby Arthur and Gustaf were able, over the years, to withdraw nearly one-half of the corporation's earned surplus. These factors are strongly demonstrative of the existence of the proscribed purpose. Helvering v. National Grocery Co., supra; Dixie, Inc. v. Commissioner, 277 F.2d 526 (2d Cir., 1960); Kerr-Cochran, Inc. v. Commissioner, supra; KOMA, Inc. v. Commissioner, 189 F.2d 390 (10th Cir., 1951).
 
 
 14
 The findings of the Tax Court are clearly supported by the evidence.
 
 
 15
 The decisions of the Tax Court are affirmed.
 
 
 
 [1]
 '102. Surtax on corporation improperly accumulating surplus
 '(a) (As amended by Sec. 103(d), Revenue Act of 1941, c. 412, 55 Stat. 687) Imposition of Tax. There shall be levide, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corpoation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following:
 '27 1/2 per centum of the amount of the undistributed section 102 net income not in excess of $100,000, plus
 '38 1/2 per centum of the undistributed section 102 net income in excess of $100,000.'
 
 
 [2]
 '115. Distributions by corporations
 '(a) Definition of Dividend.-- The term 'dividend' when used in this chapter * * * means any distribution made by a corpoation to its shareholders, whether in money or in other sproperty, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.'
 
 
 [3]
 Oyster Shell was dissolved on April 6, 1955, and its assets were distributed to its shareholders on that date
 
 
 [4]
 For these payments to constitute dividents, it was not necessary, of course, that the corporation and shareholders treat them as such, that the corporation declare a formal dividend, or that payments be proportionate to stockholdings. Clark v. Commissioner, 266 F.2d 698 (9th Cir., 1959); Lengsfield v. Commissioner, 241 F.2d 508 (5th Cir., 1947); Regensburg v. Commissioner, 144 F.2d 41 (2d Cir., 1944)
 
 
 [5]
 For a detailed discussion of the facts, see the Memorandum Findings of Fact and Opinion of Judge Tietjens, Tax Court of the United States, reported at 20 CCH Tax Ct.Mem. 1668 (1961)
 
 
 [6]
 '102 * * *
 '(c) Evidence Determinative of purpose. The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avild surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.'