Perfection Foods, Inc. v. Commissioner.
Perfection Foods, Inc. v. Commissioner
Docket No. 3253-62.
United States Tax Court
T.C. Memo 1965-15; 1965 Tax Ct. Memo LEXIS 315; 24 T.C.M. (CCH) 61; T.C.M. (RIA) 65015; January 29, 1965
*315 1. Petitioner was engaged in the canning and sale of beets and carrots during the taxable years ended March 31, 1957, through March 31, 1960, inclusive. During said period petitioner's earned surplus and undivided profits accumulated at an average rate of about $21,000 per year. Since the date of its incorporation in 1951, petitioner has never paid a dividend and its president and controlling stockholder has never received any salary. Held: Under Sec. 531, I.R.C. 1954, petitioner was availed of during the taxable years involved for the purpose of preventing imposition of surtax upon its shareholders by permitting earnings and profits to accumulate instead of being divided or distributed. 2. During the period in question petitioner and Perfection Canning Co., Inc., (incorporated in 1902) shared joint occupancy of the same building, which is owned by Canning. They also shared an office and, to some degree, shared office personnel and other employees. Petitioner paid varying amounts to Canning each year involved herein, which payments were denominated rent on petitioner's income tax returns. Petitioner's president and controlling stockholder was likewise president and controlling stockholder *316 of Canning. Petitioner was incorporated in 1951 for the stated purpose of selling beets and carrots through a broker in areas in which a broker was already representing Canning. Held: Petitioner has failed to establish by a clear preponderance of the evidence that securing the $25,000 surtax exemption was not a major purpose of its formation. Accordingly, the transfers of property from Canning to petitioner come within sec. 1551, I.R.C. 1954. Petitioner must, therefore, be denied the exemption provided by sec. 11(c), I.R.C. 1954. J. Ernest Brophy, for the petitioner. William F. Chapman for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: The respondent determined deficiencies in income tax of the petitioner as follows: Fiscal Year Ended
Amount
March 31, 1957
$ 9,678.09
March 31, 1958
11,491.14
March 31, 1959
11,615.94
March 31, 1960
11,363.87
The issues presented for our consideration are: (1) Whether petitioner was formed or availed of for the purpose of avoiding income tax on its shareholders and is thus subject to accumulated earnings tax pursuant to section 531 of the Code of 1954; [1] and (2) whether the surtax exemption provided by section 11(c) of the Code *317 was properly disallowed by respondent for the fiscal years ended March 31, 1957, through March 31, 1960. Findings of Fact Some of the facts are stipulated, are so found, and are incorporated by this reference. Petitioner is a New York corporation with its principal place of business at 320 Hoffman Street, Newark, New York. Petitioner was incorporated on June 13, 1951. Petitioner corporation filed corporate income tax returns (Forms 1120) for fiscal years ended March 31, 1957, 1958, 1959 and 1960 on the following respective dates - June 13, 1957, June 12, 1958, May 28, 1959 and June 14, 1960. All of said returns were filed with the director of internal revenue, Syracuse, New York. Since the date of incorporation of petitioner, Harry G. Chapman has been president thereof and has received no salary from petitioner. The certificate of incorporation of petitioner authorized the issuance of 1,000 shares of no par value stock. During the years involved herein the outstanding and issued shares of stock of said corporation were held 99 1/2 percent by Chapman and 1/2 percent by his wife, *318 Edith H. Chapman. On August 16, 1951, 200 shares of common stock of petitioner were issued, as original issue, as follows: Harry G. Chapman
99 shares
Edith H. Chapman
1 share
Rhea E. Chittenden
99 shares
Emma I. Chittenden
1 share Said stock was issued in consideration of $1,000 in cash being paid therefor. About January 29, 1953, after the death of Rhea E. Chittenden, Harry G. Chapman purchased the 99 shares of petitioner's common stock from the estate of Rhea Chittenden, which represented the stock originally issued to her in August 1951, and the one share of petitioner's common stock from Emma Chittenden which had originally been issued to her in August 1951. No dividends have been paid by petitioner during its entire corporate existence. Perfection Canning Co., Inc., (hereinafter sometimes called Canning) was incorporated under the laws of the State of New York in 1902. Its principal address is 320 Hoffman Street, Newark, New York. During the years ended March 31, 1957, 1958, 1959 and 1960, the principal stockholder of Perfection Canning Co., Inc., was Harry G. Chapman, whose percentage of stockholdings during said years was as follows: Year
Percentage
1957
100
1958
100
1959
90.6
1960
90.6
Chapman *319 has been president of Canning for 51 years. During all the years involved herein Perfection Canning Co., Inc., and Perfection Foods, Inc., jointly occupied the same building which is owned by Perfection Canning Co., Inc. Petitioner used Canning's offices, furniture, office equipment, bookkeeper, office help and other employees. At no time was there a written or oral agreement under which said building was jointly occupied. During the years ended March 31, 1957, and 1958, petitioner paid Canning rent of $4,800 per year. During the years ended March 31, 1959, and 1960, petitioner paid Canning rent of $6,000 per year. As of 1951, Perfection Canning Co., Inc., packed beets and carrots and sold these items through brokers. Perfection Foods, Inc., sold beets and carrots after its incorporation in 1951. Perfection Canning Co., Inc., and Perfection Foods, Inc., could each sell beets and carrots if they were not sold through brokers in the same area. Petitioner's balance sheet as of March 31st in each of the years involved was as follows: Assets
3-31-57
3-31-58
3-31-59
3-31-60
Cash
$ 20,048.78
$ 50,547.80
$ 63,856.66
$ 83,787.00
Accounts Receivable
71,358.64
68,216.06
63,622.85
70,177.99
Inventory
8,117.02
7,491.32
21,941.82
32,205.23
Prepaid Insurance
20.72
43.73
Reserve Fund
189.34
192.47
194.56
202.93
Interest Receivable
208.32
86.67
Total Assets
$ 99,942.82
$126,491.38
$149,615.89
$186,459.82
Liabilities & Net Worth
Accounts Payable
$ 3,671.67
$ 2,971.89
$ 3,673.22
$ 17,814.27
Accruals
9,634.28
15,096.67
15,280.06
16,659.78
Capital Stock
1,000.00
1,000.00
1,000.00
1,000.00
Surplus
85,636.87
107,422.82
129,662.61
150,985.77
Total Liabilities & Net
Worth
$ 99,942.82
$126,491.38
$149,615.89
$186,459.82
*320 The petitioner's balance sheet as of November 30th in each of the years involved was as follows: Assets
11-30-56
11-30-57
11-30-58
11-30-59
Cash
$ 20,554.08
$ 14,843.59
$ 8,210.92
$ 44,607.23
Accounts Receivable
79,736.10
84,146.19
133,390.97
135,436.50
Inventory
2,844.54
17,226.05
9,944.06
1,333.46
Reserve Fund
185.55
189.34
192.47
194.56
Prepaid Insurance
46.98
113.14
115.26
158.43
Total Assets
$103,367.25
$116,518.31
$151,853.68
$181,730.18
Liabilities & Net Worth
Accounts Payable
$ 12,895.80
$ 784.20
$ 17,716.52
$ 23,622.03
Accruals
7,005.94
10,125.64
8,267.62
9,039.46
Capital Stock
1,000.00
1,000.00
1,000.00
1,000.00
Surplus
82,465.51
104,608.47
124,869.54
148,068.69
Total Liabilities & Net
Worth
$103,367.25
$116,518.31
$151,853.68
$181,730.18
Accumulated earnings and undivided profits of Perfection Foods, Inc., for the years ended March 31, 1956, through 1960, were as follows: F/Y/E
Amount
March 31, 1956
$ 69,213.43
March 31, 1957
85,636.87
March 31, 1958
107,422.82
March 31, 1959
129,662.61
March 31, 1960
150,985.77
Petitioner had accumulated taxable income, without taking into account any reduction by reason of the accumulated earnings credit, for each of the taxable years involved as follows: Date
Amount
March 31, 1957
$16,423.44
March 31, 1958
21,785.95
March 31, 1959
22,239.79
March 31, 1960
21,323.16
On *321 January 10, 1962, respondent mailed, by certified mail, a notification pursuant to the provisions of section 534 of the Code. Petitioner has never served, nor caused to be served upon respondent, a statement of alleged grounds and facts on which it relies to establish that all or a part of the earnings and profits for the taxable years ended March 31, 1957, 1958, 1959 and 1960, were permitted to accumulate beyond the reasonable needs of the business in compliance with section 534(c). During each of the years involved herein, petitioner's earnings or profits were permitted to accumulate beyond the reasonable needs of its business and the corporation was availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its earnings or profits to accumulate instead of being divided or distributed. A major purpose of the transfers from Canning to petitioner in 1951 was the securing of an exemption under section 11(c) of the 1954 Code. Opinion Issue I. Accumulated Earnings Tax Under Section 531 Respondent determined that the petitioner, Perfection Foods, Inc., is subject to the accumulated earnings tax provided by section 531[2] *322 of the Code because petitioner was formed and availed of for the purpose of avoiding the income tax with respect to its shareholders, and the shareholders of Perfection Canning Co., by permitting earnings and profits to be accumulated instead of being divided or distributed. Sections 531 and 532[3] impose an additional accumulated earnings tax upon corporations availed of for the purpose of avoiding the income tax with respect to their shareholders by permitting earnings and profits to accumulate instead of being divided or distributed. Section 533 provides that the fact that corporate earnings are permitted to accumulate beyond the reasonable needs of the business *323 shall be determinative of the purpose to avoid income tax with respect to shareholders unless the corporation shall prove to the contrary by the preponderance of the evidence. Section 534 then provides, in substance, that when the respondent notifies a taxpayer corporation of his intention to issue a notice of deficiency imposing the accumulated earnings tax, the corporation, in response to such notice, may submit a statement of the relevant grounds (together with facts sufficient to show the basis thereof) on which it relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business. The burden of proof with respect to whether the accumulation actually was *324 beyond the reasonable needs of the business shall then be on the respondent with respect to the grounds set forth in the taxpayer corporation's statement. Section 535(c) contains authority for allowing an accumulated earnings credit in an amount equal to such part of the earnings and profits for the taxable years as are retained for the reasonable needs of the business. Section 537 states that the phrase "reasonable needs of the business" includes the reasonably anticipated needs of the business. In the instant case respondent sent a notification to petitioner on January 10, 1962, in accordance with provisions of section 534(b), and petitioner failed to submit a statement of grounds in response thereto. Accordingly, petitioner must bear the burden of proving that all or any part of its earnings and profits have not been permitted to accumulate beyond the reasonable needs of its business. United Business Corporation of America v. Commissioner, 62 F. 2d 754 (C.A. 2, 1933), affirming 19 B.T.A. 809 (1930), certiorari denied 290 U.S. 635. Petitioner also has the burden of proof as to the ultimate issue of whether petitioner, during the years in question, was availed of for the purpose *325 proscribed in section 532. Pelton Steel Casting Co. 28 T.C. 153, 174 (1957), affd. 251 F. 2d 278 (C.A. 7, 1958), certiorari denied 356 U.S. 958 (1958); Factories Investment Corporation 328 F. 2d 781 (C.A. 2, 1964), affirming 39 T.C. 908 (1963). In the words of the statute itself, "the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary." Section 533(a). Petitioner, in our view, has not carried its burden of proof on this issue. Whether a corporation permitted its earnings and profits to accumulate beyond its reasonable needs, present and prospective, and whether it was availed of for the purpose of avoiding the income tax with respect to its shareholders are both essentially questions of fact. Helvering v. National Grocery Co., 304 U.S. 282 (1938); I. A. Dress Co., 32 T.C. 93 (1959), affd., 273 F. 2d 543 (C.A. 2, 1960), certiorari denied 362 U.S. 976; Trico Products Corp. v. Commissioner, 137 F. 2d 424, 426 (C.A. 2, 1943), *326 affirming 46 B.T.A. 346, 375 (1942), certiorari denied 320 U.S. 799. We believe that the record before us demonstrates clearly that petitioner's financial position at the beginning of and during each year in question was adequate to meet its business needs, both immediate and anticipated, and that the corporation was availed of for the proscribed purpose. In reaching our conclusion, we are cognizant, of course, that the reasonable needs of a corporation for adequate financial strength by conservation of earnings are ordinarily to be determined by its officers and directors. Courts should be hesitant to substitute their judgment and attribute an ultimate tax avoidance motive unless the facts and circumstances clearly warrant the conclusion that the accumulations were unreasonable and for the prohibited purpose. Kerr-Cochran, Inc. v. Commissioner, 253 F. 2d 121 (C.A. 8, 1958), affirming a Memorandum Opinion of this Court; Pelton Steel Casting Co., supra. We are also mindful that what might be reasonable in one situation or for one business might be clearly unreasonable for another. William C. De Mille Productions, Inc., 30 B.T.A. 826, 830 (1934). Objective and realistic evaluation *327 of the issue herein requires us to consider fully the reasonably anticipated needs of the business of petitioner in the light of the circumstances which faced it in the operation of its business in each of the years before us, considering not only its usual business operations, (including variations in accounts receivables) but also various contingencies in that business planned by petitioner's officers. We must then inquire and determine whether the accumulated earnings and profits of prior years are in sufficient amount to cover all reasonable needs, and if so, did petitioner possess sufficient liquid assets at the end of each year to meet its expected reasonable needs, and still permit additional dividend distributions to its shareholders. Gus Blass Co., 9 T.C. 15 (1947); Sauk Investment Co., 34 B.T.A. 732 (1936). One of the grounds urged by petitioner in support of its contention that the accumulations were not beyond the reasonable needs of its business is that there was an absence of a history of the use of funds for purposes unrelated to the corporation's business operations. This is a factor to be considered, but is clearly not conclusive in the background of the record before *328 us. In this connection, we call attention to Oyster Shell Products Corporation, 313 F. 2d 449 (C.A. 2, 1963), affirming a Memorandum Opinion of this Court, in which the Court of Appeals said, in part: "Inactive employment of the corporation's earnings usually indicates an intent to permit the stockholders to avoid the income tax they would ordinarily pay on the distribution of dividends." Petitioner also contends that the accumulation was essential to carry its large accounts receivable and inventory in the late fall when its sales were at a maximum. We recognize, in this connection, that the retention of earnings to meet seasonal fluctuations and other contingencies is clearly a reasonable need of a business. See William C. Atwater & Co., 10 T.C. 218 (1948), acq. 1948-1, C.B. 1 and L.R. Teeple Co., 47 B.T.A. 270 (1942). Petitioner, however, has failed to establish the reasonableness of the amount of surplus accumulated to meet the special requirements of its operations. In support of its contention, petitioner directs our attention to its balance sheets as of November 30 and March 31 of each of the taxable years involved and alleges that, for example, in November 1958 it had $133,390.97 *329 "tied up" in accounts receivable whereas at March 31, 1959, the end of the fiscal year, it had only $63,622.85 in accounts receivable. No affirmative evidence was adduced to show the amount of cash funds or earned surplus that petitioner was obliged to use to carry its accounts receivable and inventory during the peak period of its canning season. The evidence introduced by petitioner in support of its argument that its seasonal sales activities required a large amount of cash to be "tied up" in its business operations was in vague and general terms which we find to be unconvincing. Thus, while we recognize that reasonable needs of a business include needs of the business during the peak of its operations which can reasonably be anticipated, we do not believe that petitioner has established such needs. Income Tax Regs., § 1.537-1. The purpose to provide for reasonable needs must be demonstrated in a manner "so satisfying and persuasive that it is unnecessary to look further for a motive for the action under criticism." Trico Products Corp. v. Commissioner, 46 B.T.A. 346, 374 (1942), affd. 137 F. 2d 424 (C.A. 2, 1943), certiorari denied 320 U.S. 799. Petitioner's evidence must *330 establish a complete lack of the prohibited purpose, World Publishing Co. v. United States, 72 F. Supp. 886 (N.D. Okla., 1947), affd. 169 F. 2d 186 (C.A. 10, 1948), since the existence of even a bona fide business purpose is not necessarily inconsistent with another purpose to reduce the surtax burden of its shareholders. Whitney Chain & Mfg. Co., 3 T.C. 1109 (1944), affd. per curiam 149 F. 2d 936 (C.A. 2, 1945); Trico Products Corp., supra, p. 374. It is to be noted that during the years involved herein 99 1/2 percent of petitioner's outstanding stock was owned by its president, Harry G. Chapman. Petitioner has never paid a dividend on its stock, and since its date of incorporation on June 13, 1951, petitioner's president has been paid no salary. According to the income tax returns of petitioner corporation, the amount of the increases in surplus and undivided profit in each of the years ended March 31, 1957, through March 31, 1960, respectively, was $16,423, $21,786, $22,240 and $21,323. If petitioner had distributed all of these sums to its stockholders in the years involved, and all other factors in the Chapmans' joint returns remained the same, the Chapmans would have had *331 additional tax liabilities of at least the following amounts: In 1957, $9,432.92; in 1958, $13,203.82; in 1959, $12,753.10; and in 1960, $13,112.94. Manifestly, the retention of earnings by the corporation represented a substantial tax savings to petitioner's principal and controlling shareholder. While this factor is not determinative of the intention to avoid taxes, it is entitled to some weight. The Factories Investment Corporation, 328 F. 2d 781 (C.A. 2, 1964), affirming 39 T.C. 908 (1963); Oyster Shell Products Corp., Inc. v. Commissioner, 313 F. 2d 449 (C.A. 2, 1963), affirming a Memorandum Opinion of this Court; Kerr-Cochran, Inc. v. Commissioner, 253 F. 2d 121 (C.A. 8, 1958), affirming a Memorandum Opinion of this Court. Upon the basis of the foregoing discussion and the record as a whole, we conclude that petitioner, in each of the years in question, permitted its earnings and profits to accumulate beyond the reasonable needs of its business and that petitioner was availed of for the purpose of preventing the imposition of the surtax upon its shareholders. In any event, petitioner, bearing the burden of proof, has failed to meet such burden or establish error in respondent's *332 determination on this issue. Issue II. Surtax Exemption Under Section 11(c) Respondent determined that the $25,000 surtax exemption provided by section 11(c)[4] *333 be disallowed since the lease of facilities from Perfection Canning Co., Inc., is a transfer within the purview of section 1551[5] *334 of the Code of 1954. Respondent, in his notice of deficiency, also determined that the "$100,000 accumulated earnings credit" provided by section 535(c) be disallowed. On reply brief, however, he stated that he no longer relied on that contention and we take it that the issue need not be discussed further. Section 1551, supra, places the burden upon petitioner to establish, by a clear preponderance of the evidence, that the securing of an exemption under section 11(c) was not a major purpose of the transfer in question from the Perfection Canning Co., Inc., to Perfection Foods, Inc. The issue is primarily a question of fact to be determined upon a consideration of the circumstances relevant to the transfer. Truck Terminals, Inc., 33 T.C. 876, 884 (1960), affd. 314 F. 2d 449 (C.A. 9, 1963). Income Tax Regs., § 1.1551-1(e). If the obtaining of the surtax exemption was a major purpose in transferring the property, it is sufficient to support the disallowance [*] though there may have been other purposes of varying degrees of significance. The mere showing of a valid business need is insufficient to satisfy the taxpayer's burden of proof under section 1551, supra. As indicated, therefore, *335 the taxpayer has the burden of establishing that the securing of the surtax exemption or of the credit was not a major purpose of the transfer. Hiawatha Home Builders, Inc., 36 T.C. 491, 498 (1961). Respondent contends that the transaction between Canning and the petitioner in 1951 (i.e., the creation of petitioner in said year, the leasing of space and equipment, and provision for usage of personnel) constituted a transfer of property within the intendment of section 1551, supra. It is respondent's position that upon formation of petitioner certain basic property rights were transferred to it by Canning, namely, a portion of its good will and selling rights to certain of Canning's produce, and that said rights, though intangible, had considerable value. Petitioner, in opposition, avers that the major purpose of the transfer in question was to permit the more economical use of space and personnel; that the right to use office space, dock area and office personnel on a nonexclusive basis, at most, gave rise to a license and not to a lease; and that the granting of a license does not result in a transfer of property within the purview of section 1551, supra. At the outset we note *336 that the word "property" is a term of very broad meaning and when used without any qualification may reasonably be construed to include obligations, rights and other intangibles, as well as other physical objects. Matter of Acrylite Plastics, Inc., 144 F. Supp. 492 (S.D.N.Y. 1956); Jones v. Corbyn, 186 F. 2d 450, 452 (C.A. 10, 1950). See also Tri-Lakes Steamship Co. v. Commissioner, 146 F. 2d 970, 972 (C.A. 6, 1945), where the Court in construing the meaning of the word "property" under section 112 of the Code of 1939, stated that the word is "one of broad application, sufficiently comprehensive to include both tangible and intangible property * * *." Turning to the issue of whether there was a transfer of property by Canning to petitioner within the intendment of section 1551, supra, it is to be noted that Rev. Rul. 57-202, 57-1 C.B. 297 deals with the subject of whether a transfer of a leasehold between a parent corporation and its subsidiary comes within the ambit of section 1551. In the factual portion of said ruling a subsidiary corporation was formed for the purpose of acting as sales agent for the parent. The subsidiary owned no physical assets, and equipment and facilities *337 needed to service the area were leased from the parent for an indefinite period which lease could be terminated by either party at any time on seven days written notice. The conclusion of the ruling is: The words "transfers * * * all or part of its property" are considered to be sufficient to encompass the instant situation and are not to be interpreted to embrace only complete transfers of property including passing of title, possession, ownership and control. The lease of the facilities effected a passage to the subsidiary of the use, possession, and control over the conomic benefits to be derived from such facilities. * * * We believe that Rev. Rul. 57-202, 57-1 C.B. 297 is a reasonable implementation of section 1551, supra. In Theatre Concessions, Inc., 29 T.C. 754 (1958), we were also faced with the issue as to whether or not there was a transfer of property within the meaning of section 15(c) of the 1939 Code, which was the predecessor section of section 1551, supra. In said case a new corporation, in February 1951, began to conduct the same concession business at the theatres of another corporation, as that corporation previously had corducted, using the same space and *338 equipment. Holding that the right to engage in the concession business in the theatres of the lessor was a valuable property right, we said (p. 758): The statute uses the words "transfers * * * all or part of its property" without limitations of any kind. It seems obvious to us that the congressional intent was to include any transfer of any property. * * * In the light of the foregoing, we are convinced that the transaction in dispute constituted a transfer of property, including a leasehold, within the purview of section 1551, supra. To require a specific allocation of a particular area within the premises of Canning in order to create a leasing agreement is, we believe, an unnecessary refinement, and we find petitioner's contention in this connection without merit. With respect to the major purpose of said transfer, the record shows that during all of the taxable years involved herein, Perfection Canning o., Inc., and petitioner shared joint occupancy of the same building, which is owned by Canning. Canning's phone number was listed in the Wayne Telephone Directory for 1959 and 1960 (New York Telephone Company), but petitioner was not listed therein. The two corporations shared *339 an office and, to some degree, shared office personnel and other employees. When a shipment of merchandise for petitioner was placed on the loading dock of Canning, Canning's employees handled it in the same manner as other shipments. There was no written leasing agreement covering the terms of rental for the space to be used by petitioner. However, during the years ended March 31, 1957, and 1958, petitioner paid Canning $4,800 per year, and during the years ended March 31, 1959, and 1960, $6,000 per year, which payments were denominated as rent on petitioner's income tax returns. The only witness to testify on behalf of petitioner was its present and principal stockholder, Chapman, who was, likewise, the president and principal stockholder of Canning. According to Chapman, petitioner was formed for the principal purpose of expanding potential sales volume by the use of two or more food brokers in each distribution area. After petitioner was organized in 1951, it sold beets and carrots through brokers (other than those retained by Canning) in areas in which Canning was also selling, inter alia, beets and carrots through its representatives. Apart from the foregoing, there is no evidence *340 that petitioner's function differed from that of Canning. Perfection Canning Co., Inc., was incorporated in 1902. During the years ended March 31, 1957, and 1958, Chapman owned 100 percent of the stock of Canning and during the years ended March 31, 1959, and 1960, he owned 90.6 percent of said stock. Petitioner, incorporated in 1951, has never paid a dividend on its stock, and since the date of its incorporation petitioner's president has been paid no salary. These factors, while not conclusive, are material evidence of the inhibited purpose under section 1551, supra. While petitioner may have been formed to secure "wider and more profitable distribution of canned goods," as it urges, it is settled that the interdicted purpose of securing the surtax exemption need not be the sole or principal purpose of the transfer of property. The benefit of the exemption is to be disallowed if such purpose was a major purpose. Hiawatha Home Builders, Inc., 36 T.C. 491 (1961). On the record before us, we are satisfied that a major purpose of the transfer in question was the securing of the surtax exemption. In any event, we think it manifest that, on the record before us, petitioner has failed *341 to establish by a clear preponderance of the evidence that the securing of the $25,000 surtax exemption was not a major purpose of the transfer under review. Decision will be entered under Rule 50. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Section 531 insofar as applicable herein, reads as follows: SEC. 531. IMPOSITION OF ACCUMULATED EARNINGS TAX. In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of - (1) 27 1/2 percent of the accumulated taxable income not in excess of $100,000, plus (2) 28 1/2 percent of the accumulated taxable income in excess of $100,000.↩
3. SEC. 532. CORPORATIONS SUBJECT TO ACCUMULATED EARNINGS TAX. (a) General Rule. - The accumulated earnings tax imposed by section 531 shall apply to every corporation (other than those described in subsection (b)) formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed. * * *↩
4. SEC. 11. TAX IMPOSED. (a) Corporations in General. - A tax is hereby imposed for each taxable year on the taxable income of every corporation. The tax shall consist of a normal tax computed under subsection (b) and a surtax computed under subsection (c). * * *
(c) Surtax. - The surtax is equal to the following percentage of the amount by which the taxable income exceeds the surtax exemption for the taxable year: (1) 22 percent, in the case of a taxable year beginning before January 1, 1964, (2) 28 percent, in the case of a taxable year beginning after December 31, 1963, and before January 1, 1965, and (3) 26 percent, in the case of taxable year beginning after December 31, 1964. ↩
5. SEC. 1551. DISALLOWANCE OF SURTAX EXEMPTION AND ACCUMULATED EARNINGS CREDIT. (a) In General. - If - (1) any corporation transfers, on or after January 1, 1951, and on or before June 12, 1963, all or part of its property (other than money) to a transferee corporation, (2) any corporation transfers, directly or indirectly, after June 12, 1963, all or part of its property (other than money) to a transferee corporation, or (3) five or fewer individuals who are in control of a corporation transfer, directly or indirectly, after June 12, 1963, property (other than money) to a transferee corporation. and the transferee corporation was created for the purpose of acquiring such property or was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor or transferors are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then for such taxable year of such transferee corporation the Secretary or his delegate may texcept as may be otherwise determined under subsection (d) disallow the surtax exemption (as defined in section 11(d)↩), or the $100,000 accumulated earnings credit provided in paragraph (2) or (3) of section 535(c), unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer.