**ESTABLISSEMENT KADAQ VADUZ; South American Finance Company, Plaintiffs,**

v.

**Solomone Allesandro Vittorio PIHA, a/k/a Victor Piha, Defendant.**

**No. 93 Civ. 0576(HB).**

United States District Court, S.D. New York.

Oct. 10, 1995.

Marlon E. Portes, New York City, for plaintiff.

Victor Piha, Ft. Lauderdale, FL, defendant-pro se.

### OPINION AND ORDER

BAER, District Judge.

Plaintiffs are former shareholders in the now defunct Princeton Corporation. Plaintiffs filed this action seeking to recover $117,000 from Defendant who allegedly misappropriated this money while Executive Vice President and Director of the Princeton Corporation. This bench trial was heard on September 21, 1995.

For the reasons that follow, I find that Plaintiffs failed to meet their burden of proof. Accordingly, Plaintiffs' complaint must be dismissed.

## I. Background

The Princeton Corporation ("Corporation") was incorporated under the Business Corporation Law of the State of New York in May of 1985 for the purpose of importing griege goods into the United States where the goods were processed and later sold. Plaintiffs are two of the original four shareholders in the Princeton Corporation. Defendant Victor Piha is also an original shareholder.

As Executive Vice President, Defendant was responsible for managing and controlling the monies and affairs of the Corporation. Corporation By-laws require two authorized signatures for the proper execution of all checks drawn on the corporate checking account. Plaintiffs' Exhibit No. 3, Section 6.1. While working for the Corporation, Defendant received thirty-nine checks, each in the amount of $3,000 for a total of $117,000, which were drawn on the corporate checking account. Each check was signed and indorsed by the Defendant and co-signed by another Director, Mr. Imre Rosenthal, or his delegate, Mr. James Scott. The checks were designated as "expenses."

## II. Discussion

Plaintiffs seek to recover $117,000 from Defendant under the theory that Defendant violated his fiduciary duties as an officer of the Corporation. Plaintiffs allege that Defendant violated the by-laws of the Corporation as well as Sections 717, 720(a)(1)(A), and 720(a)(1)(B) of New York State's Business Corporation Law (the "B.C.L."). *N.Y. Bus. Corp. Law* §§ 717, 720(a)(1)(A), (B) (McKinney 1986 & Supp.1995).

Under section 717 of the B.C.L., a corporate officer or director is obligated to act in the best interests of a corporation. *N.Y. B.C.L.* § 717. Accordingly, an officer or director is prohibited from exercising their corporate powers for their private or personal advantage or gain. Similarly, under sections 720(a)(1)(A) and (a)(1)(B), an action may be commenced against a corporate officer, subject to the corporation by-laws, for the officer's violation of his duties in managing and disposing of corporate assets committed to his charge, and for acquiring corporate as-

sets in violation of his duties. *N.Y.B.C.L.* § 720(a)(1)(A), (B).

Plaintiffs bear the burden of proving that Defendant violated the B.C.L. by a preponderance of the evidence. In *Duke Laboratories v. United States,* 222 F.Supp. 400, 406 (2d Cir.1963), Justice Timbers wrote a much quoted definition of the burden in a civil case:

> To establish by a preponderance of the evidence means very simply to prove that something is more likely than not so. In other words, a preponderance of evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces ... the belief that what is sought to be proved is more likely true than not true.

222 F.Supp. at 406.

This Court finds that the Plaintiffs failed to sustain their burden of proof.

Plaintiffs' case consisted of three witnesses, Mr. Gerald Goldstein, a former shareholder of the Corporation; an independent accountant, Mr. Louis DeMarco who was employed by Plaintiff and prepared a list of the thirty-nine checks in question and the Defendant. In contrast, Defendant's case consisted of his own testimony and that of Mr. William Frank, an independent accountant who was qualified as an expert. Plaintiffs' case, when weighed against that put forward by the Defendant, was insufficient to persuade this trier of fact by a preponderance of the evidence that the Defendant violated the relevant sections of the B.C.L.

The testimony of Plaintiffs' first witness, Mr. Goldstein, related to the general operation of the Princeton Corporation and to Defendant's compensation as an officer of the Corporation. Mr. Goldstein told me that he had little understanding of the day-to-day workings of the Corporation here in New York because he lives in Rio de Janeiro, Brazil but so far as he knew, the Corporation did not authorize any of the thirty-nine checks issued to the Defendant and that once he became aware that the checks had been issued, he immediately notified Mr. Rosenthal, another Director and shareholder in the Corporation. Mr. Rosenthal did not testify, leaving a gaping hole in Plaintiffs' case.

Plaintiffs' second witness was Mr. DeMarco, an accountant retained to look over the Corporation's books and records. The accountant submitted a spreadsheet prepared under his supervision which verified that thirty-nine checks for $3,000 had been issued to the Defendant from 1985 to 1989. Pls.' Ex. 1. The spreadsheet clearly listed the checks as each for $3,000 with a notation that they were for "expenses". *Id.* The accountant was unable to provide any testimony as to whether or not the checks were properly authorized by the Corporation.

Plaintiffs' third witness of the day was the Defendant. The Defendant testified, quite believably, that in 1983 he moved to New Jersey, purchased a house there, and commuted to work in New York City. Defendant stated that his wife and family joined him in New Jersey where his children attended school. In 1987, the Defendant sold his New Jersey house and purchased a house in Florida to accommodate his in-laws. The Defendant testified that, although he could have operated his portion of the business from a phone and fax in Florida, the Corporation required that he remain in New York. To accommodate this request, the Defendant rented an apartment in New York City.

Although the Defendant's testimony was not always clear or complete, the Defendant affirmatively stated that the $3,000 payments he received were authorized by the Corporation for his lodging here in New York City. The Defendant contended that the payments were agreed to in conversations with Mr. Rosenthal, another shareholder of the Corporation, and Mrs. Edith Auerbach, the Corporation's bookkeeper. The Defendant did not submit receipts for his expense payments but he testified, without argument from Plaintiffs', that he did have receipts for his apartment rent which, by the way, he told me several times was in excess of the $3,000 allocated to him. Further, Defendant testified that on occasion Mr. Rosenthal would be in a bad mood and unwilling to sign Defendant's expense checks. In that situation, Defendant would wait and resubmit the check for signature, often resulting in Defendant receiving more than one check in a single month. This fact was brought out by the spreadsheet submitted by Plaintiffs' witness, Mr. DeMarco. Pls.' Ex. 1.

The Defendant called one witness, Mr. Frank, an accountant. Mr. Frank has worked as a Certified Public Accountant in Florida since 1969 and he testified as an expert without objection from Plaintiffs. Mr. Frank testified that he worked on this case a few years ago with Mr. Robert Maroney, a lawyer hired by the Defendant. During that time, Mr. Frank spoke with Mr. Robert Prizer, the accountant for the Princeton Corporation and reviewed the records in the accounting firm regarding the allegedly fraudulent transactions of the Defendant and concluded the payments were authorized. He comes to this conclusion on the basis of his twenty-six years in the accounting business where C.P.A.'s would not certify the financial statements of the Princeton Corporation or any other corporation if $3,000 checks like the ones here had not been found to be authorized payments. Mr. Frank further testified that during his work with Mr. Prizer, he became aware of documents that supported the Defendant's proposition that the other shareholders and directors of the Corporation knew of and agreed to the payments to the Defendant.

During the course of the trial an attorney who represents Mr. Rosenthal's various business entities, Mr. Brian Bernstein, arrived to contest two subpoenas served earlier in the week by the Plaintiffs. The subpoenas request the production of various documents pertaining to the finances of the Princeton Corporation. Mr. Bernstein contended that the subpoenas failed to meet the requirements of the Federal Rules of Civil Procedure and further, that producing the requested documents would be impossible before the completion of the trial. The subpoenas were later withdrawn.

Plaintiffs clearly failed to persuade this trier of fact by a preponderance of the evidence that it is more likely than not that Defendant violated the by-laws of the Corporation and New York's Business Corporation Law. Ideally, to prove their case, Plaintiffs should have produced either Mr. Rosenthal or Mrs. Auerbach, as well as checks and check stub books of the Corporation to dem-

onstrate that these payments were not authorized. Two signatories were required on each of the thirty-nine checks issued to the Defendant and they were apparently obtained. Defendant, as well as his expert, affirmatively stated that each of the checks was authorized by the Corporation. Yet, Plaintiffs failed to produce any witnesses or testimony which directly contradict Defendant's claim.

### III. Conclusion

The above constitutes my findings of fact and conclusions of law. Having failed to carry their burden, the Plaintiffs' complaint must be dismissed.

SO ORDERED.